# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

JOSE ANTONIO RUIZ,

               Petitioner,

   v.

RANDY BLADES,

               Respondent.

Case No. 1:17-cv-00273-REB

**MEMORANDUM DECISION AND ORDER**

      Pending before the Court is a Petition for Writ of Habeas Corpus filed by Idaho state prisoner Jose Antonio Ruiz ("Petitioner"), challenging Petitioner's state court convictions. (Dkt. 1.) Respondent has filed a Motion for Summary Dismissal, arguing that all of Petitioner's claims are procedurally defaulted. (Dkt. 18.) The Motion is now ripe for adjudication.

      The Court takes judicial notice of the records from Petitioner's state court proceedings, which have been lodged by Respondent. (Dkt. 11.) *See* Fed. R. Evid. 201(b); *Dawson v Mahoney*, 451 F.3d 550, 551 n.1 (9th Cir. 2006).

      The parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (Dkt. 8.) Having carefully reviewed the record, including the state court record, the Court finds that oral argument is unnecessary. *See* D. Idaho L. Civ.

R. 7.1(d). Accordingly, the Court enters the following Order granting Respondent's motion and dismissing this case with prejudice.

## BACKGROUND

The facts underlying Petitioner's conviction are set forth clearly and accurately in *State v. Ruiz*, 366 P.3d 644 (Idaho Ct. App. 2015), which is also contained in the record at State's Lodging B-4. The facts will not be repeated here except as necessary to explain the Court's decision.

Following a jury trial in the Fourth Judicial District Court in Ada County, Idaho, Petitioner was convicted of two counts of lewd conduct with a minor under the age of sixteen and one count of sexual abuse of a minor under the age of sixteen. *Ruiz*, 366 P.3d at 645. Petitioner appealed, arguing that the trial court erred, under Idaho state law, when it denied denying Petitioner's motion for a mistrial after a state's witness—the victim's father—violated a pretrial order excluding certain descriptions or characterizations of text messages sent by Petitioner to the victim; in addition, Petitioner argued for the first time on appeal that the prosecutor committed misconduct during closing argument by misstating the reasonable doubt standard, thereby lowering the prosecution's burden of proof. (State's Lodging B-1; B-3.)

The Idaho Court of Appeals affirmed Petitioner's convictions in a published opinion. The court first held that the trial court did not err in denying Petitioner's motion for a mistrial, based on the father's testimony, under Idaho Criminal Rule 29.1. *Ruiz*, 366 P.3d at 646-47. As for Petitioner's prosecutorial misconduct claim, Petitioner had not

objected to the alleged misconduct at trial. Therefore, the appellate court declined to consider the alleged error, concluding that Petitioner had not satisfied the first prong of Idaho's fundamental error doctrine—that there was a violation of one of Petitioner's unwaived constitutional rights. *Id.* at 725-27.

In his petition for review to the Idaho Supreme Court, Petitioner argued only his second issue—prosecutorial misconduct in closing argument. However, Petitioner stated, in a footnote, that if the state supreme court were to grant review, that court also should consider the mistrial issue decided by the court of appeals with respect to the father's testimony about the text messages. (State's Lodging B-6.) The Idaho Supreme Court denied review. (State's Lodging B-7.)

Petitioner then filed a petition for state post-conviction relief. Petitioner argued that, in violation of the United Nations Body of Principles for the Protection of All Persons under Any Form of Detention or Imprisonment, he was not advised of his right to contact a "consular post" or a similar foreign representative. (State's Lodging C-1.) The state district court issued a notice of intent to dismiss the petition and denied Petitioner's demand for default. (State's Lodging C-7; C-8.) Although neither order was a final disposition of Petitioner's claims, Petitioner appealed both orders. (State's Lodging C-9; C-10.) The state district court later dismissed the petition, concluding that the principle cited by Petitioner was "not a basis for post-conviction relief" and that Petitioner's claim was "bare and conclusory" in any event. (State's Lodging C-11 at 4.)

The Idaho Supreme Court conditionally dismissed Petitioner's appeal because it was not from a final order and called for a response. (State's Lodging D-1.) Petitioner did so, attaching the district court's final order of dismissal. (State's Lodging D-2.) The state supreme court then issued a second notice of conditional dismissal, this time based on Petitioner's failure to pay the "required fees for preparation of the Clerk's Record" and the lack of any order from the trial court waiving such fees. (State's Lodging D-3.) Petitioner responded, stating, "There are no fee's for Post-Conviction Remedy." (State's Lodging D-4 (verbatim).) Petitioner did not seek a waiver of fees. Because Petitioner neither sought a waiver nor paid the record preparation fees, the Idaho Supreme Court dismissed the appeal. (State's Lodging D-5.)

In the instant federal habeas corpus petition, Petitioner asserts two claims of ineffective assistance of trial counsel ("IATC") and two claims of due process violations. Claim 1(a) "asserts IATC for failure to advise [Petitioner] of his right to consult with a consular post or national diplomat, and right to diplomatic counsel." (Memo. in Opp. to Mot. Summ. Dismissal, Dkt. 29, at 9-10.) Claim 1(b) "asserts IATC for failing to object to prejudicial testimony" regarding text messages, in violation of a pretrial order. (*Id*.)

Claim 2(a) claims that the trial court violated due process when it did not grant a mistrial after testimony about the text messages presented by (i) the victim's father and (ii) the victim's aunt, Ms. Mendoza.[1] (*Id*. at 10.) Claim 2(b) alleges that the trial court

---

[1] The only witnesses whose testimony included a description about the text messages as being concerning, inappropriate, or explicit were the victim's father and Ms. Mendoza. Therefore, when Petitioner refers to the victim's aunt, he must be referring to Ms. Mendoza, though Ms. Mendoza actually

should have granted a mistrial after the prosecutor committed misconduct by "lower[ing] the state's burden of proof, due to improper and highly prejudicial commentary during closing arguments."[2] (*Id.*)

The Court previously reviewed the Petition and allowed Petitioner to proceed on his claims to the extent those claims "(1) are cognizable in a federal habeas corpus action, (2) were timely filed in this Court, and (3) were either properly exhausted in state court or subject to a legal excuse for any failure to exhaust in a proper manner." (Dkt. 5 at 3.)

Respondent now argues that Petitioner's claims are subject to dismissal as procedurally defaulted.

## DISCUSSION

The Rules Governing Section 2254 Cases ("Habeas Rules") authorize the Court to summarily dismiss a petition for writ of habeas corpus when "it plainly appears from the face of the petition and any attached exhibits," as well as those records subject to judicial notice, "that the petitioner is not entitled to relief in the district court." Habeas Rule 4; *see* Fed. R. Evid. 201(b); *Dawson*, 451 F.3d at 551 n.1. Where appropriate, a respondent may file a motion for summary dismissal, rather than an answer. *White v. Lewis*, 874 F.2d 599, 602 (9th Cir. 1989).

---

described herself as the victim's mother's cousin. (State's Lodging A-2 at 259, 447.) For consistency, the Court will also refer to Ms. Mendoza as the victim's aunt.

[2]    Though the Court initially construed the claims in the Petition in a slightly different manner, Petitioner has clarified his claims in his opposition to Respondent's motion. (*See* Initial Review Order, Dkt. 5, at 2-3.)

For the reasons that follow, the Court concludes that Petitioner's claims are procedurally defaulted and that Petitioner has not established an adequate excuse for the default. Thus, the Petition must be dismissed with prejudice.

1.    **Standards of Law**

A habeas petitioner must exhaust his or her remedies in the state courts before a federal court can grant relief on constitutional claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). To do so, the petitioner must invoke one complete round of the state's established appellate review process, fairly presenting all constitutional claims to the state courts so that they have a full and fair opportunity to correct alleged constitutional errors at each level of appellate review. *Id.* at 845. In a state that has the possibility of discretionary review in the highest appellate court, like Idaho, the petitioner must have presented all of his federal claims at least in a petition seeking review before that court. *Id.* at 847. "Fair presentation" requires a petitioner to describe both the operative facts and the legal theories upon which the federal claim is based. *Davis v. Silva*, 511 F.3d 1005, 1009 (9th Cir. 2008).

The mere similarity between a federal claim and a state law claim, without more, does not satisfy the requirement of fair presentation. *See Duncan v. Henry*, 513 U.S. 364, 365-66 (1995) (per curiam). General references in state court to "broad constitutional principles, such as due process, equal protection, [or] the right to a fair trial," are likewise insufficient. *See Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999). Generally, for proper exhaustion, a petitioner must bring his federal claim before the state court by

"explicitly" citing the federal legal basis for his claim. *Lyons v. Crawford*, 232 F.3d 666, 669 (9th Cir. 2000), *as amended*, 247 F.3d 904 (9th Cir. 2001).

When a habeas petitioner has not fairly presented a constitutional claim to the highest state court, and it is clear that the state court would now refuse to consider it because of the state's procedural rules, the claim is said to be procedurally defaulted. *Gray v. Netherland*, 518 U.S. 152, 161-62 (1996). Procedurally defaulted claims include those within the following circumstances: (1) when a petitioner has completely failed to raise a claim before the Idaho courts; (2) when a petitioner has raised a claim, but has failed to fully and fairly present it as a *federal* claim to the Idaho courts; and (3) when the Idaho courts have rejected a claim on an adequate and independent state procedural ground. *Id.*; *Baldwin v. Reese*, 541 U.S. 27, 32 (2004); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

"To qualify as an adequate procedural ground, a state rule must be firmly established and regularly followed." *Walker v. Martin*, 562 U.S. 307, 316 (2011) (internal quotation marks omitted). That is, the state procedural bar must be one that is "'clear, consistently applied, and well-established at the time of the petitioner's purported default.'" *Martinez v. Klauser*, 266 F.3d 1091, 1093-94 (9th Cir. 2001) (quoting *Wells v. Maass*, 28 F.3d 1005, 1010 (9th Cir. 1994)). A state procedural bar can be considered adequate even if it is a discretionary rule, and even though "the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others." *Beard v. Kindler*, 558 U.S. 53, 61 (2009). A state rule's "use of an imprecise standard ...

is no justification for depriving a rule's language of any meaning." *Walker*, 562 U.S. at 318 (internal quotation marks and alteration omitted).

A state procedural bar is "independent" of federal law if it does not rest on, and if it is not interwoven with, federal grounds. *Bennett v. Mueller*, 322 F.3d 573, 581 (9th Cir. 2003). A rule will not be deemed independent of federal law "if the state has made application of the procedural bar depend on an antecedent ruling on federal law such as the determination of whether federal constitutional error has been committed." *Id.* (internal quotation marks and alteration omitted).

Once the state sufficiently pleads the existence of an adequate and independent state procedural bar, the burden shifts to the petitioner to establish that the rule is not adequate or is dependent on federal law. "The petitioner may satisfy this burden by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule." *Bennett*, 322 F.3d at 586. The ultimate burden to show that the procedural rule is adequate and independent, however, remains with the state.

**2.       Petitioner's Claims Are Procedurally Defaulted**

To resolve the exhaustion and procedural default status of Petitioner's federal claims, the Court reviews which claims were raised and addressed on the merits in the state court appellate proceedings.

### A.       *No Claims Were Properly Exhausted on Direct Appeal*

On direct appeal, the only issue Petitioner raised in his petition for review to the Idaho Supreme Court was Claim 2(b)—that the prosecutor committed misconduct in

closing argument and lowered the state's burden of proof. (State's Lodging B-6.) The other issue Petitioner argued on direct appeal—the failure to grant a mistrial after the father's testimony—was argued only to the Court of Appeals and only as a state law claim; Petitioner did not raise it in his petition for review,[3] nor did he raise it as a federal claim. (State's Lodging B-1, B-3, B-6.)

And, although Petitioner presented Claim 2(b) on direct appeal, he did not "fairly" present it. *O'Sullivan*, 526 U.S. at 848. The Idaho appellate courts generally will not review an alleged trial error asserted for the first time on appeal; instead, the courts require that a defendant must object at trial to preserve any alleged trial error. This contemporaneous-objection rule is subject to a limited exception; the Idaho appellate courts will review an error asserted for the first time on appeal only if the trial court committed fundamental error. Fundamental error review requires the defendant to demonstrate the following: (1) that an error violated an unwaived constitutional right; (2) that the error was clear or obvious, "without the need for any additional information not contained in the appellate record"; and (3) that the error "affected the defendant's substantial rights, meaning (in most instances) that it must have affected the outcome of the trial proceedings." *State v. Perry*, 245 P.3d 961, 978 (Idaho 2010).

In this case, the Idaho Court of Appeals determined that Petitioner had not satisfied the fundamental error test. In doing so, the Court concluded that Petitioner's

---

[3] The footnote in Petitioner's petition for review, stating that if the Idaho Supreme Court were to grant review, then it should also consider the mistrial claim, did not suffice to fairly present that claim because Petitioner did not—in fact—present any actual argument on that claim to the Idaho Supreme Court.

constitutional rights were not clearly violated, which is—at least in part—a limited merits review of the underlying claim. *See Ruiz*, 366 P.3d at 648-49. Therefore, "the question becomes whether the failure to object at trial is an adequate state procedural bar resulting in procedural default on federal review, or whether a fundamental error review is the equivalent of a review of the claim on its merits." *Sheahan v. Smith*, No. 1:08-CV-00444-EJL, 2011 WL 1219681, at *4 (D. Idaho Mar. 28, 2011) (unpublished). This Court has previously acknowledged this question and, without resolving it, has on several occasions gone on to consider the merits of the underlying claim. *See, e.g., Jackson v. Carlin*, No. 1:15-CV-00339-BLW, 2016 WL 5340509, at *6 (D. Idaho Sept. 23, 2016) (unpublished) ("[W]hether the fundamental error decision of the Idaho Court of Appeals constituted a procedurally-based decision, a merits-based decision, or both, is a complicated and difficult question."); *Sheahan*, 2011 WL 1219681, at *4 ("This claim is more efficiently resolved by setting aside the procedural issue and going to the merits, which the Court will address below."). However, for the reasons that follow, this Court now concludes that an Idaho appellate court's conclusion that a claim cannot be reviewed under the fundamental error doctrine is a procedurally-based decision and that the contemporaneous-objection requirement is an independent and adequate state procedural ground.

The Ninth Circuit addressed a similar question in the context of Arizona's fundamental error doctrine in *Martinez-Villareal v. Lewis*, 80 F.3d 1301 (9th Cir. 1996). The petitioner in *Martinez-Villareal* argued that "the Arizona Supreme Court's review for

fundamental error on direct appeal prevent[ed], as a matter of law," the later application

of a procedural bar. *Id*. at 1306. The court looked to Arizona law in rejecting this

argument, stating that, "[u]nder Arizona law, fundamental error review does not prevent

subsequent procedural preclusion." *Id*. (citing *State v. Lopez*, 822 P.2d 465, 470 (Ariz. Ct.

App. 1991) (holding that a Sixth Amendment claim was precluded after review for

fundamental error)). The Circuit held that, despite fundamental error review, the Arizona

procedural preclusion rule governed.

As in Arizona, an Idaho appellate court's review for fundamental error does not

transform the contemporaneous-objection procedural bar into a merits decision or

otherwise preclude later application of a procedural bar. *Severson v. State*, 363 P.3d 358,

362-63 (Idaho 2015) (holding that a determination on direct appeal that fundamental error

standards were not met does not prohibit a determination, in post-conviction proceedings,

that procedural preclusion principles apply to bar re-litigation of the claim); *see also*

*Lopez v. Ryan*, No. CV-08-1469-PHX-PGR (MHB), 2009 WL 3294876, at *11 (D. Ariz.

Oct. 14, 2009) (unpublished) ("In the last reasoned state court decision addressing the

claim,... the Arizona Court of Appeals found it waived because Petitioner failed to raise it

at trial.... *See Wainwright [v. Sykes]*, 433 U.S. 72, 86-91 [(1977)] (where state procedure

requires contemporaneous objection to preserve issue for appeal, failure to object bars

federal habeas review under independent and adequate state grounds doctrine). The

court's limited consideration of the claim's merits in connection with its fundamental

error review does not nullify the procedural bar.").

Because a determination that a defendant has not met the standards for fundamental error review is a procedurally-based decision, the Court need only consider whether that procedural bar is adequate and independent. Respondent has properly invoked the contemporaneous-objection rule, showing that it was regularly and consistently applied well before Petitioner's trial in 2014. *See, e.g., Perry*, 245 P.3d at 978. Petitioner has not come forward with any showing that this procedural rule is inadequate or is dependent on federal law. Therefore, Claim 2(b) is procedurally defaulted.

**B.     *No Claims Were Properly Exhausted on Appeal from the Dismissal of Petitioner's Post-Conviction Petition***

Petitioner did not fairly present any of his claims during his post-conviction appeal because the appeal was dismissed due to Petitioner's failure to pay the record fees or to request a waiver of fees. Again, Respondent has met his initial burden of establishing that Idaho Appellate Rule 27—which requires clerk's record fees unless a party seeks and is granted a fee waiver in the state district court—is regularly and consistently applied and that it does not depend on the application of federal law. *See, e.g., Johnson v. Jones*, 671 P.2d 1065, 1066 (Idaho 1983). Petitioner has not rebutted Respondent's showing. Therefore, no claims were fairly presented on appeal from the dismissal of Petitioner's post-conviction petition.

For the reasons set forth above, all of Petitioner's claims are procedurally defaulted.

**3.     Petitioner Has Not Shown Cause and Prejudice, or Actual Innocence, to Excuse the Procedural Default of His Claims**

Even though Petitioner's claims are procedurally defaulted, a federal district court still can hear the merits of a procedurally defaulted claim if the petitioner meets one of two exceptions: (1) a showing of adequate legal cause for the default and prejudice arising from the default, or (2) a showing of actual innocence, which means that a miscarriage of justice will occur if the constitutional claim is not heard in federal court. *Murray v. Carrier*, 477 U.S. 478, 488 (1986), *Schlup v. Delo*, 513 U.S. 298, 329 (1995).

### A.     *Cause and Prejudice*

To show "cause" for a procedural default, a petitioner must ordinarily demonstrate that some objective factor external to the defense impeded his or his counsel's efforts to comply with the state procedural rule at issue. *Murray*, 477 U.S. at 488. To show "prejudice," a petitioner generally bears "the burden of showing not merely that the errors [in his proceeding] constituted a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension." *United States v. Frady*, 456 U.S. 152, 170 (1982).

Cause for the default may exist as a result of ineffective assistance of counsel ("IAC"). For example, the failure on appeal to raise a meritorious claim of trial error—or the failure at trial to preserve a claim for appeal—may render that claim procedurally defaulted. *See Edwards v. Carpenter*, 529 U.S. 446, 452 (2000) ("[I]n certain circumstances counsel's ineffectiveness in failing properly to preserve the claim for review in state court will suffice."). However, for IAC—whether at trial or on direct

appeal—to serve as cause to excuse a default, that IAC claim must itself have been separately presented to the state appellate courts. *Id.* ("A claim of ineffective assistance ... generally must be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.") (internal quotation marks and alteration omitted).

In other words, before a federal court can consider ineffective assistance of trial counsel or counsel on his direct appeal as cause to excuse the default of underlying habeas claims, a petitioner generally must have presented the ineffective assistance of counsel claim in a procedurally proper manner to the state courts, such as in a post-conviction relief petition, including through the level of the Idaho Supreme Court. If the ineffective assistance asserted as cause was not fairly presented to the state courts, a petitioner must show that an excuse for that separate default exists, as well. *Id.* at 453 ("[A]n ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted.").

A petitioner does not have a federal constitutional right to the effective assistance of counsel during state post-conviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551, 554 (1987); *Bonin v. Vasquez*, 999 F.2d 425, 430 (9th Cir. 1993). Therefore, the general rule is that any errors of counsel during a post-conviction action cannot serve as a basis for cause to excuse a procedural default. *Coleman*, 501 U.S. at 752.

However, the Supreme Court established an exception to that general rule in *Martinez v. Ryan*, 566 U.S. 1 (2012). *Martinez* held that, in limited circumstances,

"[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id.* at 9. *Martinez* does not apply to any claims other than IATC claims, and it can apply only if the underlying IATC claim is both exhausted and procedurally defaulted. *Davila v. Davis*, 137 S. Ct. 2058, 2063 (2017) (holding that *Martinez* does not apply to underlying claims of ineffective assistance of direct appeal counsel); *Hunton v. Sinclair*, 732 F.3d 1124, 1126-27 (9th Cir. 2013) (holding that *Martinez* does not apply to claims under *Brady v. Maryland*); *Creech v. Ramirez*, No. 1:99-CV-00224-BLW, 2016 WL 8605324, at *21 (D. Idaho Jan. 29, 2016) (holding that claims were not subject to *Martinez* because they were not fundamentally altered from claims decided on the merits in state court proceedings and, therefore, were not procedurally defaulted).

The Supreme Court has described the *Martinez* cause-and-prejudice test as consisting of four necessary prongs: (1) the underlying claim of ineffective assistance of trial counsel must be a "substantial" claim; (2) the "cause" for the procedural default consists of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" collateral review proceeding where the IATC claim could have been brought; and (4) state law requires that an IATC claim be raised in an initial-review collateral proceeding, or by "design and operation" such claims must be raised that way, rather than on direct appeal. *Trevino v. Thaler*, 569 U.S. 416, 423, 429 (2013).

Petitioner argues that cause and prejudice exist because his direct appeal counsel rendered ineffective assistance. (Dkt. 29 at 9.) However, Petitioner did not separately fairly present a direct appeal ineffectiveness argument in state court. Therefore, Petitioner cannot use any alleged attorney error on direct appeal to excuse the default of his claims. *See Edwards*, 529 U.S. at 452.

Petitioner also invokes the *Martinez* exception with respect to Claim 1(b), presumably alleging that the lack of counsel or ineffective assistance of counsel during initial-review collateral proceedings caused the default of that claim. (Dkt. 29 at 9-10.) However, Claim 1(b), which alleges IATC based on trial counsel's alleged failure to object to testimony regarding the text messages, is not substantial. Whether Petitioner is referring to the testimony of the victim's father or the victim's aunt, his claim is belied by the record.

Petitioner's conduct with the victim came to light after the victim's aunt, Ms. Mendoza, saw some text messages to the victim on Petitioner's phone. As stated by Ms. Mendoza at trial, the text messages from Petitioner read as follows: "I miss you"; "You're acting weird"; "When am I going to see you. I like you"; and "I don't think you understand what I'm trying to tell you." (State's Lodging A-2 at 277.) The actual text messages had been deleted, so the jury heard only what Ms. Mendoza stated she remembered the texts as saying.

Prior to trial, the court excluded any testimony that described or characterized the text messages as "salacious" or "explicit"; rather, the texts could be described only by the

person who actually saw them—Ms. Mendoza—and they could be characterized only as "concerning or unusual or that they gave [Ms. Mendoza] concern that something was going on":

> My concern here, counsel, is frankly because the jury can't view for themselves the texts but if they are described as in some way to be salacious, that that would be unfair prejudice when the jury themselves can't look at the texts. I think her actions of why she did something can be explained in that they gave her a concern, and she can explain what she read the texts to be....
>
> So that's my preliminary ruling. I believe there's a great potential for unfair prejudice to characterize the texts as what more [sic] than I described. Again, the texts are not available for the jury to decide for themselves.
>
> Again, in making this ruling I'm not yet ruling that the contents of the texts are in fact admissible or even that the testimony of Ms. Mendoza that she confronted [the victim] or the defendant is admissible. We haven't yet crossed those bridges.

(State's Lodging A-2 at 74-75.) The trial court later determined that Ms. Mendoza's testimony about the content of the text messages was admissible, to the extent her characterization of those message complied with the pretrial order. (*Id*. at 252-58.)

The victim's father was the State's first witness. When he testified that the victim's aunt told him she had seen text messages from Petitioner to the victim that "were in a sexual matter or explicit," Petitioner's counsel immediately objected, argued (correctly) that this testimony violated the pretrial order, and moved for a mistrial. (State's Lodging A-2 at 227-29.) The trial court denied the motion for a mistrial but gave

a curative instruction.[4] (*Id*. at 232.) Far from sitting "quietly while the State engaged in trial by ambush tactics by flagrantly disregarding the district court's pre-trial ruling" (Dkt. 29 at 10), Petitioner's trial attorney did indeed object.

Further, to the extent that Petitioner is alleging that his trial counsel failed to object to the text-message testimony by the victim's aunt based on a violation of the pretrial order, Petitioner is wrong as a factual matter when he states that the aunt's testimony violated that order. Ms. Mendoza testified as to what she remembered the texts saying, which was allowed by the court. (State's Lodging A-2 at 277.) Then, the prosecutor asked her, "And when you saw these text messages, were you concerned?" Ms. Mendoza answered, "Yes." (*Id*. at 277-78.) Petitioner's counsel did not object to this testimony, presumably because this testimony did not violate the trial court's order. The pretrial order expressly allowed Ms. Mendoza to describe the texts as concerning, and that is all she did. (State's Lodging A-2 at 74-75; 252-58.)

For the above reasons, Petitioner has not shown that cause and prejudice excuse the default of any of his claims.

---

[4]     The jury was instructed as follows:

> Ladies and gentlemen of the jury, [the victim's father] did not see any of the text messages that you may hear testimony about later in this case. His characterization or any other person's characterization of those text messages is not relevant and it's not something you should consider. I want you to strike from your mind his testimony about the text messages and any characterization about them. You're to consider only what you hear the testimony the actual content of any text messages are. And then it is up to you and only you to determine the relevance of those text messages and their import on this case. No one's characterization of them should be considered by you.

*Ruiz*, 366 P.3d at 646 (alteration in original).

**B.      Actual Innocence**

If a petitioner cannot show cause and prejudice, he still can bring a procedurally-defaulted claim in a federal habeas petition if he demonstrates that he is actually innocent. *Murray v. Carrier*, 477 U.S. at 496. Actual innocence in this context "means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).

In asserting actual innocence, a petitioner must "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). A procedurally defaulted claim may be heard under the miscarriage-of-justice exception only if, "in light of all of the evidence, 'it is more likely than not that no reasonable juror would have found [the petitioner] guilty beyond a reasonable doubt.'" *United States v. Avery*, 719 F.3d 1080, 1083 (9th Cir. 2013) (quoting *Schlup*, 513 U.S. at 327). Stated another way, the petitioner must show that, but for the constitutional error, *every* reasonable juror would vote to acquit.

This is an extremely demanding standard that "permits review only in the 'extraordinary' case." *House v. Bell*, 547 U.S. 518, 538 (2006) (quoting *Schlup*, 513 U.S. at 327). A court considering whether a petitioner has established actual innocence must consider "all the evidence, old and new, incriminating and exculpatory, admissible at trial or not." *Lee v. Lampert*, 653 F.3d 929, 938 (9th Cir. 2011) (en banc) (internal quotation marks omitted). Although "habeas petitioners who assert convincing actual-innocence

claims [need not] prove diligence to cross a federal court's threshold," a court "'may consider how the timing of the submission and the likely credibility of a petitioner's affiants bear on the probable reliability of evidence of actual innocence.'" *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1935 (quoting *Schlup*, 513 U.S. at 332) (alterations omitted).

The actual innocence inquiry "does not turn on discrete findings regarding disputed points of fact, and '[i]t is not the district court's independent judgment as to whether reasonable doubt exists that the standard addresses.'" *House*, 547 U.S. at 539-40 (quoting *Schlup*, 513 U.S. at 329 (alteration in original)). Rather, the court must "make a probabilistic determination about what reasonable, properly instructed jurors would do." *Schlup*, 513 U.S. at 329; *see also Jenkins v. Hutton*, 137 S. Ct. 1769, 1772 (2017) (per curiam) (reversing a decision where the court of appeals considered whether the alleged error "might have affected the jury's verdict" instead of "whether a properly-instructed jury could have" come to the same decision absent the error).

Petitioner has provided no new, reliable evidence that he is actually innocent. Instead, he merely invokes the actual-innocence exception by stating, "For this Court to allow such error to stand—would be to sanction manifest injustice." (Dkt. 29 at 10.) Petitioner has failed to meet the strict burden of showing a fundamental miscarriage of justice.

# CONCLUSION

For the foregoing reasons, Petitioner's claims are procedurally defaulted, and Petitioner has not established an adequate excuse for that default. Therefore, Respondent's Motion for Summary Dismissal will be granted.

# ORDER

**IT IS ORDERED:**

1. Respondent's Motion for Summary Dismissal (Dkt. 18) is GRANTED, and the Petition (Dkt. 1) is DISMISSED with prejudice.

2. The Court does not find its resolution of this habeas matter to be reasonably debatable, and a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c); Habeas Rule 11. If Petitioner wishes to appeal, he must file a timely notice of appeal with the Clerk of Court. Petitioner may seek a certificate of appealability from the Ninth Circuit by filing a request in that court.

DATED: September 28, 2018

Ronald E. Bush
Chief U.S. Magistrate Judge